# 13-15077

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT



NATIONAL COUNCIL OF LA RAZA;
LAS VEGAS BRANCH OF THE NAACP, Branch 1111;
RENO-SPARKS BRANCH OF THE NAACP, Branch 1112,

*Plaintiffs-Appellants,*

*v.*

ROSS MILLER, in his official capacity as Secretary of State of the
State of Nevada; MICHAEL WILLDEN, in his official capacity as Director
of the Department of Health and Human Services of the State of Nevada,

*Defendants-Appellees.*

───────────

*Appeal From the United States District Court
for the District of Nevada, Reno
Case No. 3:12-cv-00316-RCJ-VPC, Judge Robert Clive Jones*

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

Neil Steiner
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
212-698-3822
neil.steiner@dechert.com

Robert Kengle
Alan Martinson
LAWYERS' COMMITTEE FOR
  CIVIL RIGHTS UNDER LAW
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
202-662-8336
amartinson@lawyerscommittee.org

David Rubino
DĒMOS
220 Fifth Avenue, 2nd Floor
New York, New York 10001
212-485-6239
drubino@demos.org

Sarah Brannon
PROJECT VOTE
805 15th Street, NW, Suite 250
Washington, D.C. 20005
202-546-4173
sbrannon@projectvote.org

*Attorneys for Plaintiffs-Appellants*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................3

I.  PLAINTIFFS HAVE ARTICLE III STANDING ..............................3

    A.  Plaintiffs Alleged Organizational Standing Based Upon the
        Diversion of Resources Traceable to Defendants' Violations ............4

    B.  The NAACP Plaintiffs Have Associational Standing And Do
        Not Need To Identify Individually Harmed Members In The
        Complaint ...............................................................................8

II.  DISMISSAL OF THE COMPLAINT FOR FAILURE TO PROVIDE
     NOTICE WAS IMPROPER........................................................10

    A.  Plaintiffs' Complaint Alleges Violations Occurring Within
        Both 120 and 30 Days of a Federal Election......................................11

    B.  The NVRA Does Not Create A Heightened Pleading Standard
        for Factual Allegations Related to Notice ...........................................14

    C.  The Complaint Sufficiently Alleges An NVRA Violation Based
        On Defendants' Policy ......................................................................16

        1.  Plaintiffs Provided Notice to the Defendants That They
             Were Violating the NVRA Requirement That They
             Distribute Voter Registration Applications to Clients
             Unless They Decline "In Writing"...........................................17

        2.  Defendants' Policy Requiring Employees to Violate the
             NVRA Constitutes an Ongoing Violation that Occurred
             Within 30 Days of a Federal Election, Thereby
             Eliminating the Need to Provide Notice ..................................19

    D.  There is No Reason to Depart from the Plain Language of the
        Statute Permitting Shortened or No Notice When Violations
        Occur in Close Proximity to a Federal Election...............................20

    E.  Dismissal with Prejudice was Improper............................................22

III.  PLAINTIFFS HAVE DEMONSTRATED BIAS OF THE DISTRICT
      COURT SUFFICIENT TO WARRANT REASSIGNMENT TO A
      DIFFERENT JUDGE ..................................................................22

CONCLUSION...................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*,
880 F.2d 176 (9th Cir. 1989) ............................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................15

*Ass'n of Cmty. Orgs. For Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999) .....................................................passim

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................15

*Crawford v. Marion Cnty. Election Bd.*,
472 F.3d 949 (7th Cir. 2007), a*ff'd*, 553 U.S. 181 (2008) ...................7,

*Dodd v. Spokane Cnty.*,
393 F.2d 330 (9th Cir. 1968) ............................................................11

*Earp v. Cullen*,
623 F.3d 1065 (9th Cir. 2010) ..........................................................26

*Erickson v. Pardus*,
551 U.S. 89 (2007)............................................................................15

*Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*,
666 F. 3d 1216 (9th Cir. 2012) ...................................................3, 5, 6

*Ferrand v. Schedler*,
No. 11-926, 2011 WL 3268700 (E.D. La. July 21, 2011)............16, 18

*Florida State Conference of N.A.A.C.P. v. Browning*,
522 F.3d 1153 (11th Cir. 2008) .......................................................7, 9

*Ga. State Conference of N.A.A.C.P. v. Kemp*,
841 F. Supp. 2d 1320 (N.D. Ga. 2012)..................................16, 17, 18

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
352 F.3d 367 (9th Cir. 2003) ............................................................25

*Harkless v. Brunner*,
  545 F.3d 445 (6th Cir. 2008) ...........................................................6, 7

*In re Century Aluminum Co. Sec. Litig.*,
  --- F.3d ---, 2013 WL 1633094 (9th Cir. Apr. 17, 2013)....................................12

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
  --- F.3d ----, 2013 WL 2278588 (9th Cir. May 24, 2013) ..................................25

*Judicial Watch, Inc. v. King*,
  2012 WL 6114897 (S.D. Ind. Dec. 10, 2012) ............................................13, 16

*Kelson v. City of Springfield*,
  767 F.2d 651 (9th Cir.1985) ..............................................................22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................3, 4, 10

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958)......................................................................10

*Omar v. Sea-Land Service, Incorporated*,
  813 F.2d 986 (9th Cir. 1987) ............................................................11

*Perez v. Nidek Company Limited*,
  711 F.3d 1109 (9th Cir. 2013) ..........................................................12

*Polich v. Burlington Northern, Inc.*,
  942 F.2d 1467 (9th Cir. 1991) ..........................................................22

*Sandusky Cnty. Democratic Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004) ............................................................9

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ..........................................................13

*State of Nevada v. Countrywide Home Loans Servicing, LLP*,
  No. 3:10-cv-419-RCJ-PAL ...............................................................23

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009)....................................................................8, 9

*Townley v. Miller*,
    693 F.3d 1041 (9th Cir. 2012) (Reinhardt, J. concurring)...................................23

*U.S. v. Johnson*,
    680 F.3d 1140 (9th Cir. 2012) .............................................................21

*United States v. Jacobs*,
    855 F.2d 652 (9th Cir. 1988) ..............................................................24

*Valdez v. Squier*,
    676 F.3d 935 (10th Cir. 2012) .............................................................17

*Veterans for Common Sense v. Shinseki*,
    644 F.3d 845 (9th Cir. 2011) ...............................................................9

*Wong v. Bell,*
    642 F.2d 359 (9th Cir. 1981) ..............................................................11

## STATUTES

1 U.S.C. § 1 ...............................................................................15

42 U.S.C. § 1973gg.................................................................15, 21

42 U.S.C. § 1973gg-5..............................................................1, 17

42 U.S.C. § 1973gg-5(a)(6)(A)..........................................................19

42 U.S.C. § 1973gg-5(a)(6)(B)..........................................................17

42 U.S.C. § 1973gg-9(b).....................................................10, 16, 20

42 U.S.C. § 1973gg-9(b)(3).............................................................19

## OTHER AUTHORITIES

FED. R. CIV. P. 201 ......................................................................14

FED. R. CIV. P. 201(b) ...................................................................14

Federal Rule of Civil Procedure 8 .........................................................14

U.S. Census Bureau at http://dataferrett.census.gov/ ......................................14

## INTRODUCTION

Nevada officials have systematically failed to provide voter registration services at public assistance agencies, in violation of Section 7 of the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg-5. On May 10, 2012, Plaintiffs notified Defendants that, unless Nevada developed a plan to correct the violations and change the improper policies, they would file a lawsuit after the statutory 20-day notice period expired. Defendants' violations continued, and Plaintiffs filed the present action on June 11, 2012.

Notably, Defendants did not challenge the sufficiency of Plaintiffs' allegations. Rather, they moved to dismiss solely on the ground that they were not given enough notice and opportunity to fix the violations before being sued. And after additional time passed, Defendants withdrew that motion.

Nevertheless, the District Court took it upon itself to oppose Plaintiffs' case at every turn. It refused to grant Plaintiffs' counsel's unopposed pro hac vice admissions, sua sponte ruled that Plaintiffs lack Article III standing, and granted Defendants' withdrawn motion to dismiss for insufficient notice. Plaintiffs' Opening Brief demonstrated that the District Court's sua sponte standing ruling and dismissal of the Complaint for failure to provide notice were erroneous and that on remand the case should be assigned to a different judge. Specifically, Plaintiffs have sufficiently pleaded both organizational and associational standing by

1

alleging that they diverted resources from other activities to counteract Defendants' NVRA violations and that they have members who would have standing in their own right, and Plaintiffs have satisfied the NVRA's notice requirements by providing more than 20 days' notice of alleged violations within 120 days of a federal election and also by alleging violations within 30 days of a federal election (for which notice is not required).

In their attempt to defend the District Court's errors, Defendants argue (without citing any cases that support their position) for the application of an overly-restrictive standard for Article III standing and seek to apply that standard to a set of supposed facts that contradict the allegations in the Complaint. They also argue that Plaintiffs' allegations of widespread and ongoing violations were not enough to take advantage of the statute's abbreviated notice provisions for violations occurring in close proximity to federal elections, ignoring the plain language of the NVRA and relying on an invented requirement that Plaintiffs plead "discrete" violations. And Defendants suggest that the instances of the District Court's active, self-directed, and erroneous hostility to Plaintiffs' case were simply reasonable mistakes or even justified conduct, which did not create an appearance of bias. As demonstrated in the Opening Brief and below, however, the facts and the law are to the contrary, and there is no merit to Defendants' defense of the District Court's order. Hence, the District Court's order should be reversed and

2

remanded to the District Court with instructions that the case be reassigned to a different district judge.

## ARGUMENT

## I. PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs' Opening Brief demonstrated that the district court erred in sua sponte dismissing the Complaint with prejudice and without leave to amend on the ground that Plaintiffs lack standing. The allegations of the Complaint far surpass the "general factual allegations of injury" required to plead organizational standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The NAACP Plaintiffs also sufficiently allege that they have members who have been and will be harmed by Defendants' violations of the NVRA, which gives them associational standing, an independent, alternative basis of standing to bring this action.

In their attempt to defend the District Court's dismissal on a ground they did not advocate below, Defendants rely extensively on cases analyzing standing at the summary judgment stage (and finding that Article III standing *was established*), including a mis-reading of Judge Ikuta's *dissent* in this Court's decision last year in *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F. 3d 1216, 1219 (9th Cir. 2012). Notably, Defendants cite *no* authority that even

3

suggests, much less holds, that the harm Plaintiffs have alleged is insufficient to establish organizational standing at the motion to dismiss stage.[1]

### A. Plaintiffs Alleged Organizational Standing Based Upon the Diversion of Resources Traceable to Defendants' Violations

The Complaint alleges that each of the Plaintiffs diverted resources to voter registration of low-income Nevadans who should have been offered voter registration by Defendants, but for Defendants' NVRA violations. ER-060-63, ¶¶ 50-53, 55-56. As explained in the Opening Brief, these factual allegations easily satisfy the threshold showing of injury necessary at the initial pleading stage. (Opening Br. at 21-22); *see also Lujan*, 504 U.S. at 561; *Ass'n of Cmty. Orgs. For Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (noting the distinction between the allegations necessary to plead standing at the motion to dismiss stage and the evidentiary showing necessary to withstand a summary judgment motion).

Rather than accepting Plaintiffs' factual allegations as true, Defendants ask this Court to conclude that Plaintiffs did not actually suffer any harm because "using resources to run voter registration drives targeted at low income and

---

[1] Defendants do not respond to Plaintiffs' argument (Opening Br. at 24-26) that the District Court erred in sua sponte dismissing the action for lack of standing without providing Plaintiffs the opportunity to present arguments as to why standing existed or to amend the Complaint to add additional allegations establishing standing. At a minimum, this Court should remand the action to give Plaintiffs an opportunity to cure any purported defect by amending the Complaint.

minority citizens . . . is exactly the same activity they describe engaging in as a core part of their missions." (Opp. at 8.) Defendants base their entire argument on Judge Ikuta's dissent in *Roommate.com*, in which she questioned whether an organization was injured by being forced to expend resources to advance its core mission. That argument suffers two fatal defects.

First, as Defendants concede, Judge Ikuta's opinion "is not controlling circuit precedent." (Opp. at 11.) Of course it is not, because it is a dissent. The controlling, majority opinion in *Roommate.com* held that plaintiffs' expenditures to investigate defendant's discriminatory practices and to start new educational campaigns that target discriminatory roommate advertising -- and thereby further the organizations' mission -- sufficed to confer organizational standing on plaintiffs. *See Roommate.com*, 666 F.3d at 1219.

Second, Judge Ikuta was concerned that plaintiffs in *Roommate.com* were claiming, as a diversion of resources, money spent on activities that would have been spent in the *exact same way* even if there had been *no illegal conduct* by the defendants. *Id.* at 1226 (Ikuta, J. dissenting in relevant part).[2] Plaintiffs here

---

[2]     Defendants also mis-read Judge Ikuta's partial dissent to draw an indefensible jurisprudential line between a diversion of resources that takes an organization away from carrying on its mission, and a diversion that advances the organization's mission, but nevertheless impairs the organization's ability to engage in other core activities. According to Defendants, only the former suffices as a concrete injury in fact. Not only is

5

alleged that, but for Defendants' violations of their voter registration obligations, Plaintiffs would have allocated their resources *differently*.[3] Thus, the cases are factually distinguishable, and Judge Ikuta's reasoning does not support Defendants' argument.

Moreover, the cases Defendants cite actually support Plaintiffs. For example, in *Fowler*, the Fifth Circuit held that evidence that plaintiff "ha[d] expended resources registering voters in low registration areas who would have already been registered if the appellees had complied with [their NVRA responsibilities]" sufficed to establish that it had been injured and had organizational standing. 178 F.3d at 361. Similarly, in *Roomate.com*, the majority held that plaintiffs' expenditure of funds to combat defendant's discriminatory housing practices constituted an injury in fact sufficient for it to have organizational standing. 666 F.3d at 1219.

Indeed, the only authority cited by Defendants that involved a motion to dismiss, *Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008), held that allegations with no relevant difference from those here gave the plaintiff organizational

---

        this proposed "advance vs. detract" test for injury in fact not the law, but it would also be inoperable in lawsuits to remedy violations of the NVRA. Such a test would require the organizational plaintiff ***not*** to have as part of its mission the registration of underrepresented voters.

[3]    The District Court improperly refused to accept these factual allegations based on its speculation that Plaintiffs would have spent their resources in the same manner, not a different manner. ER-021-23.

standing to sue regarding Ohio's noncompliance with the NVRA. *See id.* at 458-59. In *Harkless*, the Sixth Circuit held that the district court improperly dismissed the complaint and denied leave to amend where the organizational plaintiff alleged (in a proposed amended complaint) that it "would not have expended funds on voter registration activities outside [public assistance] offices *but for* defendants' NVRA violations." *Id.* (emphasis added).[4] In short, Plaintiffs' allegations of Defendants' but for causation of their diversion of resources are sufficient. *See id.*; *see also Fowler*, 178 F.3d at 361 (organization had standing to sue where it "expended resources registering voters in low registration areas who would have already been registered if the appellees had complied with the requirement under the NVRA"); *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164-66 (11th Cir. 2008); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) ("[T]he new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote. . . . The

---

[4] Defendants attempt to distinguish *Harkless* on the ground that the organizational plaintiff in that case conducted voter registration drives "specifically at public aid offices," (Opp. at 10), but this misses the point. The *Harkless* court did not hold that Plaintiff organizations *must* conduct drives at public assistance offices in order to have standing; rather, the crucial point was that, as Plaintiffs have alleged here, resources would not have been diverted to the voter registration drives but for defendants' NVRA violations. 545 F.3d at 458-59.

7

fact that the added cost has not been estimated and may be slight does not affect standing . . . ."), a*ff'd*, 553 U.S. 181, 189 n.7 (2008).

### B. The NAACP Plaintiffs Have Associational Standing And Do Not Need To Identify Individually Harmed Members In The Complaint

Associational standing requires only allegations establishing the existence of a member who has or will be harmed, as opposed to there being a high probability of such a person existing. And the NAACP Plaintiffs have met their burden of pleading associational standing. ER-049-50, ¶¶ 18-19; ER-062-64, ¶¶ 54, 57. Thus, NAACP Plaintiffs need not name specifically in the Complaint their members who have been harmed by the Defendants' conduct.

Defendants' reliance on *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), for the proposition that the Complaint alleges only probabilistic standing, which is insufficient for associational standing, is unavailing for two reasons. First, *Summers* involved a hypothetical injury to members of an environmental organization -- the chance that one of them would, at some indeterminate point in the future, visit an unidentified, small swath of forest in Sequoia National Park and suffer an unspecified injury. *See id.* at 497-98. Here, the identity of the members is determinate -- those who receive public assistance as well as those who may apply for or receive public assistance in the future. The time when the harm could be expected to occur is also determinate -- as immediate as the next time they

8

apply for benefits, renew, recertify or change their address and are not offered the opportunity to register to vote. And the specific harm is known -- not being able to register to vote or update their voter registration address. (Opening Br. at 22.)

Second, *Summers* did not disturb the principle that organizations have associational standing to sue for activity that threatens disenfranchisement of an unpredictable portion of their membership. *See Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 862 n.17 (9th Cir. 2011); *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004).[5] Because the plaintiffs in *Summers* were not themselves the object of the government action being challenged -- a situation in which "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish" -- they faced a greater legal challenge to demonstrate that the challenged practice affected them. *Summers*, 555 U.S. at 493-94 (quoting *Lujan*, 504 U.S. at 562). Here, meanwhile, Defendants' failure to offer voter registration during the covered public assistance transactions harms the NAACP Plaintiffs' members directly and immediately (i.e., they are the "objects" of the challenged action) when they are denied the opportunity to register to vote.[6]

---

[5] While *Shinseki* was vacated on other grounds, the portion of the opinion rejecting the necessity of naming of individual members for associational standing quotes wholesale from *Browning*, which is still good law. *See Browning*, 522 F.3d at 1160.

[6] Further, the NAACP Plaintiffs should not be required to publicly identify, at the pleading stage, specific members because organizations that advance the

*Cf. Lujan*, 504 U.S. at 561-62 (where the suit challenges "the legality of government action or inaction . . . . [and] the plaintiff is himself an object of the action (or foregone action) at issue[,] . . . there is ordinarily little question that the action or inaction has caused him injury.").

## II. DISMISSAL OF THE COMPLAINT FOR FAILURE TO PROVIDE NOTICE WAS IMPROPER

Section 11 of the NVRA permits plaintiffs to file suit:

    (1)    90 days after providing notice to the state's chief election official, regardless of when the violation occurred;

    (2)    20 days after providing notice to the state's chief election official, if the violation occurred within 120 days of a federal election; or

    (3)    Without any notice at all, if the violation occurred within 30 days of a federal election.

42 U.S.C. § 1973gg-9(b). Plaintiffs satisfied both the second and third prongs of Section 11.[7]

---

civil rights of underrepresented populations have an interest in maintaining the privacy of their membership. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) (holding unconstitutional the forced release of NAACP membership lists). Such information may be obtained in discovery, where a protective order or other appropriate limitations may be sought. *See Fowler*, 178 F.3d at 355 (describing limitations on disclosure of membership information). In any event, if specific names of NAACP members receiving public assistance must be included in the Complaint, Plaintiffs should have been given an opportunity to add such allegations prior to the sua sponte dismissal of their claims. *See supra* n.1.

[7]    As a threshold matter, the District Court improperly dismissed the Complaint on non-jurisdictional grounds, for failure to state a claim upon

### A.    Plaintiffs' Complaint Alleges Violations Occurring Within Both 120 and 30 Days of a Federal Election

The Complaint alleges substantial facts demonstrating continuing and ongoing violations of the NVRA, including statistical evidence linking Defendants' violations to a lower level of voter registration, specific violations observed in December 2011, and a policy that facially violates the NVRA.  As demonstrated in the Opening Brief, those allegations, taken as a whole, indicate that Defendants failed to provide voter registration services, as required by Section 7 of the NVRA, within 120 days and/or within 30 days of the June 12, 2012 federal election and therefore plausibly allege a violation of the law.  (Opening Br. at 35-40, 44-46.)

Defendants completely ignore this central point.  Specifically, Defendants attempt to isolate and attack the statistical evidence *independent of the other*

---

which relief can be granted, without providing notice or giving Plaintiffs an opportunity to be heard.  *See, e.g.*, *Dodd v. Spokane Cnty.*, 393 F.2d 330, 334 (9th Cir. 1968). *Omar v. Sea-Land Service, Incorporated*, 813 F.2d 986 (9th Cir. 1987), on which Defendants rely to defend the District Court's order, is strictly limited to cases where "[p]laintiffs cannot possibly win relief under the statute they have urged." *Wong v. Bell,* 642 F.2d 359, 362 (9th Cir. 1981). In all other cases, such as this one, the District Court, "*must* give notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion." *Id*. (emphasis added) (citations and internal quotation marks omitted).

*allegations*.[8]  This is not surprising, because the whole of the allegations cannot

reasonably be challenged on plausibility grounds.

The cases relied on by Defendants, (Opp. at 36-37, 40-41), demonstrate the

point:  Allegations fail on plausibility grounds when they are "merely consistent

with" illegal conduct and there are obvious alternative legal explanations for the

result alleged.  *See In re Century Aluminum Co. Sec. Litig.*, --- F.3d ---, 2013 WL

1633094, *3 (9th Cir. Apr. 17, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)) (plaintiffs did not adequately plead securities fraud where there were two

offerings, only one of which was alleged to have been fraudulent, and plaintiffs

could not say whether the shares they owned came from the fraudulent offering).[9]

Here, by contrast, there is *no* "alternative explanation," much less an "obvious"

one.  The most plausible inference to be drawn from the allegations of specific

observed instances and a policy that violates Section 7 on its face, combined with

the statistical data, is Defendants' widespread and ongoing non-compliance with

the NVRA.

---

[8]    Defendants do not even address the other allegations.  They also do not
respond to Plaintiffs' arguments that the District Court committed reversible
error when it failed to consider the allegations in the light most favorable to
the Plaintiffs and affirmatively considered matters outside the Complaint.
(Opening Br. at 38-39 & n.21.)

[9]    *Perez v. Nidek Company Limited*, 711 F.3d 1109 (9th Cir. 2013), is also not
helpful to Defendants.  That case simply held that conclusory allegations,
without any factual support, are insufficient.  *Id.* at 1113.

12

Even if the review of the allegations were -- contrary to the rules of pleading -- limited solely to Plaintiffs' statistical allegations, Defendants' argument still fails.  The statistical evidence, when considered as a whole, supports an inference that a violation has occurred.  The Census data, which show that very few low-income Nevadans are actually registered, strongly undermine the two alternative hypotheses Defendants advance to explain the small number of low-income Nevadans being registered at public assistance offices, either Defendants' poor record-keeping that led them to submit inaccurate data to the Election Assistance Commission ("EAC") or Plaintiffs' own successful voter registration efforts (the latter being the District Court's speculation).[10]  Plaintiffs' explanation -- that Nevada's failure to comply with the requirements of Section 7 caused Nevada's poor statistical performance -- is the *most plausible* inference, so the statistical allegations easily pass muster.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.") (emphasis in original); *see also Judicial Watch, Inc. v. King*, 2012 WL 6114897,

---

[10]     If Defendants truly believe that these alternative explanations are correct, they can seek to develop evidence supporting their position during discovery, but they provide no basis whatsoever for favoring their assertion over Plaintiffs' allegations, and any evaluation of the factual merits of those explanations is inappropriate at this stage.

*2-3 (S.D. Ind. Dec. 10, 2012) (plaintiff allowed to bring suit where notice letter allegations relied primarily on statistical evidence).[11]

### B. The NVRA Does Not Create A Heightened Pleading Standard for Factual Allegations Related to Notice

There is also no merit to Defendants' assertion that the statute requires a "discrete violation" to take advantage of the shortened notice period or dispense with notice. (Opp. at 31-32.) To require specific allegations of a "discrete violation" would, in essence, improperly require all plaintiffs to meet a heightened pleading standard by elevating one type of allegation (discrete examples) over other types (such as allegations that lead to an inference of violations). Such a requirement would run counter to Federal Rule of Civil Procedure 8 and the

---

[11] Defendants also attempt to have this Court essentially conduct a mini trial as to the Census Bureau data by asking the Court to take judicial notice of additional data as to the "voter registration gap." According to Defendants, "for households earning $20,000 or less, the percent registered nationwide is 58.1%, and for households earning more than $100,000 is 79.9%, a 'voter registration gap' of 21.8%." (Opp. at 38.) These data, however, represent only a small data subset. A review of the full Census Bureau data set reveals that the actual nationwide registration gap is 18.7 percent, compared to Nevada's 24.8 percent, meaning that Nevada's gap is nearly one-third larger than the national average. (The U.S. Census Bureau data is available via a data mining and extraction tool called DataFerrett, which is developed and made available by the U.S. Census Bureau at http://dataferrett.census.gov/.). In any event, the uncertainties surrounding the numbers Defendants claim underscores that judicial notice of their data is inappropriate. *See* FED. R. CIV. P. 201(b); FED. R. CIV. P. 201 advisory committee's note ("A high degree of indisputability is the essential prerequisite."). Moreover, regardless of the size of the gap (in absolute terms or relative to other states), the existence of a gap by itself supports Plaintiffs' allegations.

Supreme Court's repeated holding that "plausibility" does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (distinguishing "unadorned, the-defendant-unlawfully-harmed-me accusation[s]"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) ("Here, the Court is not requiring heightened fact pleading of specifics . . . ."); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("[s]pecific facts are not necessary").

None of Defendants' arguments warrant the drastic step of departing from the usual pleading standard with regard to the NVRA's notice provisions. First, the NVRA's use of the past tense in describing the "violation" that may serve as the basis for notice (and a lawsuit without notice within 30 days of a federal election) does not mean that allegations of continuing violations are insufficient. By definition, Plaintiffs' allegations of "ongoing" and "continuing" violations at the time of the Complaint means numerous, repeated, independent violations of the NVRA had occurred in the past and continued to occur, including within 30 days of the election.

Second, the use of a singular term, "the violation," in no way requires a single, "discrete" violation to be alleged. It is an elementary canon of statutory interpretation that the singular includes the plural. 1 U.S.C. § 1. Indeed, the private right of action in the NVRA necessarily contemplates litigation as the means to address widespread and systemic problems. *See* 42 U.S.C. § 1973gg; *see*

15

*also, e.g.*, *Ga. State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320, 1339 (N.D. Ga. 2012) (noting allegations of "systemic failures" in refusing to declare case moot where defendants had changed policies that violated the NVRA); (Opening Br. at 35 & n.18.) *No* case holds to the contrary.

Finally, the word "discrete" is nowhere to be found in the NVRA's notice provision. *See* 42 U.S.C. § 1973gg-9(b). Rather, the plain language simply speaks of the "violation." 42 U.S.C. § 1973gg-9(b). Thus, courts have routinely rejected arguments that notice letters contained insufficient detail. *See, e.g.*, *Judicial Watch*, 2012 WL 6114897, at *2-3 (allegations of an "apparent violation" based primarily on statistical evidence sufficient for notice requirement); *Kemp*, 841 F. Supp. 2d at 1334 ("The general proposition -- that Georgia was not complying with the mandates of the NVRA, especially with respect to providing voter registration services at public assistance offices and having in place policies to limit any services actually provided to in-person transactions -- is set out clearly in the notice letter."); *Ferrand v. Schedler*, No. 11-926, 2011 WL 3268700, *6 (E.D. La. July 21, 2011) (holding the same).

## C. The Complaint Sufficiently Alleges An NVRA Violation Based On Defendants' Policy

Defendants argue that the existence of a policy that facially violates the NVRA is not sufficient to state a violation of the NVRA and comply with the

16

notice provision. They cite no support for this assertion, which is at odds with both common sense and case law. *See, e.g.*, *Kemp*, 841 F. Supp. 2d at 1334 (existence of state statutes and policies violating the NVRA considered in assessing notice letter).

> 1. Plaintiffs Provided Notice to the Defendants That They Were Violating the NVRA Requirement That They Distribute Voter Registration Applications to Clients Unless They Decline "In Writing"

Section 7(a)(6)(B) of the NVRA requires states to create a form by which applicants may, in writing, decline to receive a voter registration application. This voter preference form asks clients to indicate whether they wish to register to vote, contains "yes/no" checkboxes, and recites various disclosures. *See* 42 U.S.C. § 1973gg-5(a)(6)(B). Section 7's plain language requires that registration forms must be provided unless a client declines "in writing" on the voter preference form. 42 U.S.C. § 1973gg-5.

"[A]n applicant's failure to check either the 'YES' or 'NO' box on the [voter preference] form does not constitute a declination 'in writing.'" *Valdez v. Squier*, 676 F.3d 935, 945-46 (10th Cir. 2012). Thus, the NVRA requires that when a public assistance applicant or client does not check either box, he or she *must* be given a voter registration application -- the NVRA is an opt-out, not an opt-in statute. *Id.* at 943-47. Every other court to consider this issue has agreed with the

17

Tenth Circuit's holding in *Valdez*. *See Kemp,* 841 F. Supp. 2d at 1333 (stating that failing to provide a voter registration application when the voter preference form is blank "likely runs afoul of Section 7"); *Ferrand*, 2013 WL 264603, at *20, 26, 28 (holding that voter registration applications must be distributed to applicants or clients who fail to check either box on the voter preference form).

There is no dispute that Nevada's policy was to only give voter registration forms to clients who checked "yes" on the voter preference form. (Opp. at 43.) Defendants argue essentially that the existence of such a policy violation could not serve as a basis for a lawsuit with shortened or no notice because they did not understand the law and, if the Plaintiffs had given "proper notice," Defendants would have had "an opportunity to review the [*Valdez*] case, review their existing policies and to change the policies." (Opp. at 45.)

But Plaintiffs indisputably gave notice that this policy violated the NVRA, even though no notice was required. On May 10, 2012, Plaintiffs sent a notice letter that specifically discussed the *Valdez* case and explained that the State's policy, as followed by each and every public assistance office visited, violated the NVRA.[12] Plaintiffs, therefore, actually provided 31 days' notice of the fact that

---

[12] The notice letter stated, in part: "In each DWSS or WIC office visited, the clerks stated that voter registration applications are provided only to clients who check "Yes" in response to the question whether they "would . . . like to register to vote here today." ER-070-71.

Nevada's policy violated the law before filing suit, ER-001, which was more than

enough time for the Defendants to read the case and meet with Plaintiffs to start

developing a "comprehensive plan for compliance," and avoid litigation. ER-071.

Instead, Defendants tried to delay a meeting until *after* the impending election and

refused to provide material that would have been useful in developing a

compliance plan. ER-060, ¶ 48.

> 2. Defendants' Policy Requiring Employees to Violate the NVRA
>    Constitutes an Ongoing Violation that Occurred Within 30
>    Days of a Federal Election, Thereby Eliminating the Need to
>    Provide Notice

The NVRA unequivocally states that private parties may bring a lawsuit

without notice for violations within 30 days of a federal election. 42 U.S.C. §

1973gg-9(b)(3). Even if the Plaintiffs had not sent a notice letter discussing the

policy violation, their suit still would have satisfied the NVRA's notice provisions.

Defendants' policy required employees at public assistance agencies across

Nevada to violate the NVRA every time someone did not respond in writing to the

voter preference question. *See* 42 U.S.C. § 1973gg-5(a)(6)(A).

Defendants do not dispute that this policy was in place during the 30 days

prior to the June 12, 2012 federal primary election. And even if they did, that

would be a factual dispute that is not relevant at this stage. Rather than dispute

whether the policy necessarily led to NVRA violations within 30 days of an

19

election, Defendants assert that the "mere existence" of a policy that violates the NVRA cannot form the basis for a lawsuit without notice. (Opp. at 45.) But the existence of the policy gives rise to the natural inference that agency employees were following the policy during both the 120-day period and 30-day period before the election, and supports the allegation that discrete violations of the NVRA repeatedly occurred within those periods.

**D.**     **There is No Reason to Depart from the Plain Language of the Statute Permitting Shortened or No Notice When Violations Occur in Close Proximity to a Federal Election**

As noted, the plain language of Section 11 of the NVRA provides that Plaintiffs have satisfied the notice requirement. *See* 42 U.S.C. § 1973gg-9(b).). Defendants contend that here, though Plaintiffs have satisfied the plain language of the NVRA's notice provisions, following this plain language would allow a plaintiff to "avoid giving any notice at all by just alleging that a violation was 'on-going' or 'continuous.'" (Opp. at 33.) In fact, a plaintiff can only "avoid giving notice" if a violation occurs within the 30 days before an election, which is true regardless of whether the violation is ongoing. For example, Plaintiffs could not have filed their lawsuit in December 2011 by alleging a continuing violation; they would still have needed to wait 90 days because there was no imminent federal election. By design, the notice provision eliminates the notice period for only a small portion of the calendar.

20

Underlying Defendants' argument is the suggestion that potential plaintiffs can somehow take unfair advantage of the statute's tiered approach. The statute's plain language, however, is controlling, and the existence of a limited set of circumstances in which one might potentially be able to take advantage of the system is not a basis for disposing of the statute's plain language or requiring a heightened pleading standard. *See, e.g.*, *U.S. v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012) ("Statutory interpretation begins with the plain language of the statute. If the plain meaning of the statute is unambiguous, that meaning is controlling.") (internal quotation marks and citations omitted). And, in this case, there is no basis for ascribing improper motives to Plaintiffs. Plaintiffs' goal is for Nevada public assistance agencies to offer voter registration. The manner in which compliance with the law is obtained -- whether through negotiation or litigation -- is irrelevant.

Finally, Defendants wrongly imply that the need for a quick resolution, and, consequently, the tiered notice system, is dependent on when potential plaintiffs first learn about the violations. It is not. The purpose of the tiered notice system is to force states to act more quickly when an election is approaching. To the extent that there are ongoing violations occurring close to an election, Section 11 manifests Congress' intent to force the state to fix them, or face litigation immediately. *See* 42 U.S.C. § 1973gg (noting NVRA's purposes, including to increase voter registration and participation).

21

### E. Dismissal with Prejudice was Improper

Putting aside the fact that Plaintiffs fully complied with the notice provision, the District Court compounded its error by dismissing the Complaint with prejudice and without leave to amend. Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment. *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467 (9th Cir. 1991); *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985). Defendants nevertheless argue that, "[e]ven if Plaintiffs could have cured the problems with Article III standing, the District Court nevertheless correctly dismissed the Complaint with prejudice because no amendment could have cured Plaintiffs' lack of statutory standing." (Opp. at 17.) That is incorrect. As demonstrated above, when a violation occurs within 30 days of a federal election, no pre-suit notice is required. Accordingly, if the District Court found that the allegations of "ongoing and continuous" violations were insufficiently pleaded, it should have granted Plaintiffs leave to amend their complaint to allege "discrete" violations within that time frame.

### III. PLAINTIFFS HAVE DEMONSTRATED BIAS OF THE DISTRICT COURT SUFFICIENT TO WARRANT REASSIGNMENT TO A DIFFERENT JUDGE

Defendants attempt to avoid reassignment by making tortured excuses for the District Judge's conduct and citing cases that provide little guidance under this

set of facts. The District Judge demonstrated a personal bias and apparent hostility toward Plaintiffs such that reassignment is necessary and justified.

First, the District Judge scheduled a preliminary injunction hearing after the close of voter registration. This may not be conclusive in and of itself, but the District Judge's history of using procedure to prevent parties from obtaining preliminary relief in advance of elections, *Townley v. Miller*, 693 F.3d 1041, 1044 (9th Cir. 2012) (Reinhardt, J. concurring), and his subsequent conduct make it reasonable to infer that the District Court's decision was motivated by bias, rather than its calendar.

Next, the District Judge took the highly unusual step of scheduling a hearing for the purpose of denying Plaintiffs' unopposed pro hac vice applications. Defendants' purported explanation -- that the District Judge was simply enforcing the State Bar's pro hac vice rules -- is wholly without basis. The local rule, LR IA 10-2, contains no limitation on the number of pro hac vice applications that may be granted in any one case. Rather, Nevada rules limit the number of times the same lawyer should be admitted pro hac vice in different cases within a specific period without becoming admitted as a full member of the state bar. Moreover, the District Judge does not appear to have a hard and fast rule regarding the number of pro hac vice admissions he allows in a case.[13]

---

[13] For example, in *State of Nevada v. Countrywide Home Loans Servicing,*

Furthermore, the District Judge went to great lengths to issue his sua sponte dismissal. Using a ***withdrawn*** motion as his vehicle for raising the standing issue, the District Judge drafted a 31-page Order dismissing the matter with prejudice when none of the issues discussed were before him.[14] Moreover, there was no standing deficiency, much less an obvious one. Plaintiffs' standing allegations were in line with allegations in other cases, including NVRA cases, where courts had found standing, and were not even challenged by Defendants. Consequently, the decision below had to rely heavily on a tortured interpretation of a case from another circuit that evaluated standing at the summary judgment stage and *found standing*. *See Fowler*, 178 F.3d 350.

Finally, the District Judge's commentary also shows, at the very least, an appearance of bias. Contrary to Defendants' efforts to distinguish *United States v. Jacobs*, 855 F.2d 652 (9th Cir. 1988), Plaintiffs have pointed to a string of questionable actions by the District Judge. Every single one of the Plaintiffs' limited interactions with the District Judge in this case provoked an unfair response.[15]

---

*LLP*, No. 3:10-cv-419-RCJ-PAL, the District Judge granted admission to a total of twenty eight (28) out-of-state attorneys to appear on behalf of the defendants, with many defendants being allowed multiple pro hac vice counsel, including one defendant who had five.

[14] The Order also unnecessarily discusses Plaintiffs' withdrawn preliminary injunction motion. ER-027-31.

[15] The cases Defendants cite where this Court found that reassignment was

24

In particular, the District Judge's statements about "a lot of New York lawyers who in essence are representing their own interests [and not] the plaintiff that they represent," ER-043:4-7, "an ulterior motive" as to when Plaintiffs sent their notice letter, ER-013, that Plaintiffs "hastily scrambled three witnesses," ER-018, and decrying Plaintiffs' "tactics of delaying," ER-018, in the context of an unopposed motion and sua sponte dismissal, suggest a negative pre-judgment of Plaintiffs' case. In these circumstances, reassignment to a different judge is well-warranted. *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y,* --- F.3d ----, 2013 WL 2278588, *6 (9th Cir. May 24, 2013) ("Panels have broad discretion to reassign cases on remand when they feel justice or its appearance requires it.") (citing *United States v. Quach,* 302 F.3d 1096, 1103–04 (9th Cir. 2002)); *see also id.* at *6 ("The district judge has expressed strong and erroneous views on the merits of this high profile case. Without ourselves reaching any determination as to his ability to proceed impartially or impugning his integrity, to preserve the appearance of justice, we conclude reassignment is appropriate.");

---

inappropriate are distinguishable because they largely involve complaints about single, discrete actions or statements by a district court judge. *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 382 (9th Cir. 2003) (judge was rude to plaintiff's president and suggested his law clerk had done a poor job on the case); *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 191 (9th Cir. 1989) (the only bases for reassignment were the district court judge's strong conviction that a certain witness's testimony was not credible and consideration of evidence from government sources related to the same witness).

25

*Earp v. Cullen*, 623 F.3d 1065, 1071-72 (9th Cir. 2010) (reassignment appropriate where the Court could not "reasonably expect the district judge to set aside" previously-expressed views).

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' Opening Brief, the decision of the District Court should be reversed, and the case should be reassigned to a different district judge on remand.

/s/ Neil A. Steiner
Neil A. Steiner
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822

David Rubino
Dēmos
220 Fifth Avenue, 2nd Floor
New York, NY 10001
(212) 485-6239

Robert A. Kengle
Alan Martinson
Lawyers' Committee for Civil Rights
Under Law
1401 New York Avenue, N.W., Ste 400
Washington, DC 20005
(202) 662-8336

Sarah Brannon
Project Vote
805 15th Street NW, Suite 250
Washington, DC 20005
(202) 546-4173

26

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32(A)(7)

I hereby certify that the foregoing brief complies with the type-volume

limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B) because the

brief contains 6,279 words, excluding the parts of the brief exempted by Fed. R.

App. P. 32(a)(7)(B)(iii). The foregoing brief complies with the typeface

requirements and the type style requirements of Federal Rule of Appellate

Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced

typeface using Microsoft Office Word 2010 in font size 14 Times New Roman

style.

/s/ Neil A. Steiner

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 2, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

/s/ Neil A. Steiner